### TURNER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 18, 1921.)

No. 1863.

1. **Criminal law ☞365(3)—Evidence of assault on deceased's companion immediately after killing admissible as res gestæ.**

   In a prosecution for homicide, where the state's evidence showed defendant attempted to rob deceased and his companion, while defendant claimed he was merely begging for money and that he shot in self-defense, evidence that immediately after the killing defendant made a violent assault upon deceased's companion, indicating an attempt to rape, was admissible as part of the res gestæ.

2. **Homicide ☞112(2)—One attempting robbery cannot plead self-defense.**

   One who brought on the shooting by attempting to rob the deceased at the point of a pistol cannot avail himself of the plea of self-defense.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond.

William H. Turner was convicted of murder in the first degree, and he brings error. Affirmed.

Wm. F. Denny, of Richmond, Va., for plaintiff in error.

Hiram M. Smith, Sp. Asst. U. S. Atty., of Richmond, Va.

Before KNAPP and WOODS, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The defendant, William H. Turner, was convicted of murder in the first degree and sentenced to death. The assigned errors relied on are in the admission of testimony and the refusal to set aside the verdict as contrary to the law and the evidence. These facts are not in dispute.

At about midnight of May 22, 1920, Thomas M. Moore and Miss Pearl Clark, his fiancée, were sitting in an automobile on the side of the road from Washington to Alexandria at the end of the bridge. The defendant came up, and after exchanging a few words he and Moore shot two or three times at each other. Moore was killed almost instantly, and the defendant was slightly wounded in the right thigh and thumb. Miss Clark and the defendant were the surviving witnesses of the tragedy.

The real issue was made by the conflict in the testimony as to defendant's purpose in approaching the car and during the altercation with Moore, as indicated by his words and actions. According to Miss Clark, defendant came to the car, presented a pistol at Moore, sitting in the rear seat of the automobile, and demanded what Moore had, saying that he wanted a dollar; Moore answered he had nothing; Moore, on defendant's demand, got out of the car, and Miss Clark also got out; Moore, in response to her request to give defendant what he had, repeated that he had nothing; defendant then demanded what Miss Clark had, threatening her if she made an outcry, and she took

☞ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

off and gave him two rings and a wrist watch; in the excitement she could not tell who fired the first shot.

The defendant gave this account:

"At that time I was in a lady's house, sitting around about 2½ hours, and started away from her house, and came down on the road, and some boys were shooting crap, and they had a quart of whisky, and I saw the bottle of whisky, and I stopped and joined them, and lost a couple of dollars, or something like that, and after that they stopped and come back up, and I started back to Washington to the south end of the bridge. I had three car tickets in my pocket, but did not have a penny to pay my way, and as I was walking along the electric railroad track I could see a car sitting there between two trees, and I walked over to see what was the matter. I thought it was an accident. When I got there the party raised up and sat down in the seat, and when they raised up I said, 'I beg your pardon, I thought you had an accident;' and they said, 'No, nothing was the matter.' I said, 'Sport, you cannot give me a dollar?' and I thought he was getting the dollar, and he got out a gun and shot at me, and shot again and hit me in the hip, and when he shot the second time I pulled on him and shot, and he said to the lady, 'Pearl, he has shot me.' She was standing about a foot and a half from him, and he was standing at the radiator, three feet from the rear, when I got the second shot, and I pulled out my gun and shot back again the second time, and he fell, and I said, 'Here is where he shot me, about.' I did not know that I had shot him that bad. I went back to see if I could take him in the car to Washington, and that is the time she gave me the rings, and she went on towards Washington to the south end of the bridge, and I had to go south, and she went on hollering, and I came south, and she went north."

The testimony of Dr. Swain that in his opinion Moore must have collapsed immediately upon being shot tends to support defendant's statement that Moore fired the first shot. Defendant on cross-examination admitted that Miss Clark handed to him her rings and watch before any shot was fired, but insisted that she did so in response to his mere begging request for a dollar.

[1] On the issue thus made of defendant's motive—whether he accosted Moore as a highway robber, or as a mendicant asking for a little money and receiving the jewels in response, and shot Moore in self-defense—the District Judge allowed Miss Clark to testify to a violent assault upon her by defendant immediately after the homicide, indicating an attempt to ravish while she was fleeing from the spot in the effort to escape and summon help.

Testimony as to this act of the defendant, following the homicide with scarcely a break in continuity, is clearly competent as a part of the res gestæ, and as evidence that defendant's motive, when he accosted Moore and his companion and throughout, was not innocent, but malicious. Even if the defendant had not testified at all, the evidence would have been competent as part of the res gestæ, showing felonious motive. It does not affect the admissibility of the testimony that the evidence may show another crime. The rule, we think, is too familiar for extended discussion. 10 R. C. L. 105, 164. The court carefully instructed the jury that the evidence of Miss Clark as to the assault on her could have no weight, except on the issue of motive. Defendant had the benefit of his denial of the assault.

[2] There is no basis for the assignment of error in the refusal to set aside the verdict. If the defendant brought on the shooting by at-

272 F.—8

tempting to rob the deceased at the point of a pistol, he cannot avail himself of the plea of self-defense.

Affirmed.